### IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

**KEMPER AIP MENTALS, LLC &**
**WAELZHOLZ BRASMETAL**
**LAMINAÇÃO LTDA.,**

**Plaintiff,**

v.

**UNITED STATES,**

**Defendant.**

</td><td>

**Before: Hon. Timothy M. Reif**
**Judge**

**Court No. 26-00762**

</td></tr>
</table>

**<u>RESPONSE TO OPPOSITION TO MOTION TO INTERVENE</u>**

Proposed Defendant-Intervenors, Nucor Corporation ("Nucor"), Steel Dynamics, Inc. ("SDI"), United States Steel Corporation ("U.S. Steel"), and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW") (collectively, "Proposed Defendant-Intervenors"), respectfully submit this reply in further support of their motions to intervene as of right pursuant to 28 U.S.C. § 2631(j)(1)(B) and Rule 24(a)(1) of the Rules of this Court. Plaintiffs, Kemper AIP Metals, LLC ("Kemper") and Waelzholz Brasmetal Laminacao Ltda. (collectively, "Plaintiffs"), oppose intervention based on two fundamental errors. First, Plaintiffs misstate the governing law of standing applicable to defendant-intervenors in actions before this Court. Second, Plaintiffs attempt to impose limitations on intervention that appear nowhere in the text of § 2631(j)(1)(B) and that have been consistently rejected by controlling precedent. Neither argument withstands scrutiny, and neither provides any basis to deny Proposed Defendant-Intervenors' statutory right to intervene.

Plaintiffs' opposition rests on a premise that is as legally incorrect as it is extraordinary: that domestic producers, including those on whose behalf the antidumping petition was filed, lack

1

Ct. No. 26-00762

any cognizable interest in defending on judicial review the U.S. Department of Commerce's ("Commerce") final determination, including Commerce's scope rulings defining the merchandise covered by the investigation. That proposition has no basis in the statute, in Article III, or in common sense. Domestic producers do not merely have a generalized interest in the outcome of this litigation; they have a concrete and substantial interest in ensuring that Commerce's determination—particularly its interpretation and application of the scope language defining subject merchandise—is not judicially narrowed in a manner that undermines the very relief Congress designed the antidumping laws to provide.

An adverse ruling here would not be limited to this case. It would severely inhibit petitioners' ability to defend antidumping or countervailing duty orders on appeal, even where the question was fully litigated and resolved during the administrative proceeding. Plaintiffs' theory would turn intervention into a vehicle for relitigating the merits of the Commerce's decision under the guise of standing and would threaten to exclude the very parties Congress expressly authorized to participate in § 1516a actions.

## I.      BACKGROUND

These actions arise from Commerce's final affirmative determination in the antidumping duty investigation of certain corrosion-resistant steel products ("CORE") from Brazil. See *Certain Corrosion-Resistant Steel Products From Brazil*, 90 Fed. Reg. 42,219 (Dep't Commerce Aug. 29, 2025) (final affirm. deter. of sales at less than fair value) ("Final Determination"); *see also* Issues and Decision Memorandum accompanying *Certain Corrosion-Resistant Steel Products From Brazil* (Dep't Commerce Aug. 26, 2025) ("Final IDM").

Commerce initiated its investigation on September 5, 2024, following petitions filed by domestic producers of CORE and a labor union. During the investigation, Commerce examined

2

Ct. No. 26-00762

pricing, sales, and cost data submitted by respondents and addressed numerous legal and factual issues bearing on the scope of the merchandise subject to investigation.

An issue raised in the scope proceedings concerned whether brass-coated CORE products were covered by the scope of the investigation. Kemper AIP Metals, LLC and Waelzholz Brasmetal Laminação LTDA (collectively, "Kemper") argued that brass-coated CORE products should be excluded from the scope on the ground that brass is not "corrosion-resistant" within the meaning of the scope language and that such products were allegedly distinct from other in-scope CORE products. *See* Final Scope Decision Memorandum accompanying *Certain Corrosion-Resistant Steel Products from Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, the Republic of Türkiye, the United Arab Emirates, and the Socialist Republic of Vietnam* (Aug. 25, 2025) at cmt 2 ("Final Scope Decision Memorandum").

Domestic interested parties, including Proposed Defendant-Intervenors, opposed Kemper's request and maintained that the scope language is deliberately non-exhaustive; that brass is not listed among the coatings expressly excluded from the scope; and that the record of the investigation—including the petition, model-match characteristics, and ITC materials referenced under Commerce's regulations—confirmed Petitioners' consistent intent to include brass-coated CORE products within the scope. *Id.*

Commerce rejected Kemper's exclusion request. In its Final Scope Decision Memorandum, Commerce concluded that cartridge brass (C260) alloy-coated CORE products are covered by the plain language of the scope; that the list of corrosion-resistant coatings identified in the scope is non-exhaustive; and that brass is conspicuously absent from the list of excluded coatings. Commerce further determined that the evidence on the record resolved any alleged

3

Ct. No. 26-00762

ambiguity at the first stage of its scope analysis under 19 C.F.R. § 351.225(k)(1), rendering consideration of the k(2) factors unnecessary. *Id.*

On that basis, Commerce issued its Final Determination, which Plaintiffs now challenge pursuant to 19 U.S.C. § 1516a.

## II.    ARGUMENT

### A.    Section 2631(J)(1)(B) Confers an Unconditional Right to Intervene, and Plaintiffs Apply the Wrong Legal Framework

Plaintiffs' opposition rests a basic mischaracterization of the legal standard that controls here. Rather than applying the statute that controls intervention in this case, Plaintiffs attempt to impose requirements drawn from Rule 24(a)(2) and a freestanding conception of "interest" that Congress did not adopt. That approach is inconsistent with the statutory scheme governing actions under 19 U.S.C. § 1516a.

This is a Rule 24(a)(1) case. Congress has already supplied the applicable intervention standard through 28 U.S.C. § 2631(j)(1)(B), which provides that in a § 1516a action, "only an interested party who was a party to the proceeding in connection with which the matter arose may intervene, and such person may intervene as a matter of right." Once that provision applies, intervention is governed by Rule 24(a)(1), which applies "when a statute of the United States confers an unconditional right to intervene."

The Court of International Trade has confirmed that this right is mandatory. "According to the plain meaning of 28 U.S.C. § 2631(j)(1)(B), the right to intervene established thereunder is the only means by which {a movant} may intervene in this case, and that right is an unconditional right." *Dofasco Inc. v. United States*, 31 C.I.T. 1592, 1594, 519 F. Supp. 2d 1284, 1286–87 (2007).

Plaintiffs nevertheless improperly attempt to shift the analysis to Rule 24(a)(2), arguing that Intervenors must demonstrate a "legally protectable interest," impairment, and inadequate

4

Ct. No. 26-00762

representation. That is the wrong standard. Congress displaced Rule 24(a)(2) for § 1516a cases by enacting a specific intervention mechanism in § 2631(j)(1)(B). Plaintiffs' argument therefore targets a requirement that does not apply. This distinction is not technical. Section 2631(j) contains both a permissive intervention provision and a specific carveout for § 1516a actions. In those actions, qualifying parties "may intervene as a matter of right."

### B. Plaintiffs' "Lack of Interest" Theory Improperly Seeks to Resolve Merits Questions at the Intervention Stage

Plaintiffs' central contention is that Intervenors are not interested parties under 28 U.S.C. § 2631. Resp. in Opp'n. to Mots. to Intervene (Mar. 31, 2026), ECF 26 at 2 ("Opp'n Mot."). That argument fails because it ignores how "interested party" is defined in § 1516a actions and improperly substitutes a merits theory for the statutory test. Plaintiffs' argument fails for an even more fundamental reason: it is an overt attempt to litigate the merits of this case at the intervention stage. Whether brass-coated CORE products fall within the scope defined by Commerce is not a threshold jurisdictional issue; it is the principal substantive dispute raised in the complaint. Plaintiffs' position would require the Court to assume the correctness of Plaintiffs' merits theory regarding scope coverage in order to deny intervention. Section 2631(j)(1)(B) does not permit intervention to hinge on acceptance of the plaintiff's preferred reading of the administrative record.

Section 2631(j)(1)(B) applies specifically to actions under § 1516a. For those actions, the Court has held that "'interested party' is defined for purposes of § 1516a by 19 U.S.C. § 1677(9) . . . ." *Dofasco*, 31 C.I.T. at 1595, 519 F. Supp. 2d at 1287 (comparing 19 U.S.C. § 1516a(a)(2)(A) and 28 U.S.C. § 2631(c), both of which permit commencement of an action by "an interested party who was a party to the proceeding in connection with which the matter arose," with 28 U.S.C. § 2631(j)(1)(B), which limits intervention to "an interested party who was a party to the proceeding in connection with which the matter arose," and applying the presumption that Congress intended

5

Ct. No. 26-00762

identical language used in different provisions of the same statutory scheme to have the same meaning); *see also Sorenson v. Sec'y of Treasury of U.S.*, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning."). But even more fundamentally, by virtue of 28 U.S.C. § 2631(k)(1), the term "interested party" for purposes of § 2631 is given the meaning set out in section 771(9) of the Tariff Act of 1930, 19 U.S.C. § 1677(9). 19 U.S.C. § 2631(k)(1).

That resolves Plaintiffs' attempt to isolate Title 28 from Title 19 and their claim that "Intervenors therefore cannot treat a determination of "interested party" under 19 U.S.C. § 1677(9) in the underlying investigations as a self-executing right to intervene under § 2631." Opp'n. Mot. at 5. The definition is supplied by the trade statute governing the underlying proceeding.

Each of the Proposed Defendant-Intervenors satisfies that definition. Each is an 'interested party' within the meaning of 19 U.S.C. § 1677(9) and was a party to the proceeding in connection with which this action arose. 28 U.S.C. § 2631(j)(1)(B).  28 U.S.C. § 2631(j)(1)(B); 19 U.S.C. §§ 1677(9)(C) and 1516a(d); 19 C.F.R. § 351.102(b).

Plaintiffs do not dispute that Proposed Defendant-Intervenors participated in the underlying proceeding. Instead, they dismiss the unconditional nature of the intervention right under § 2631(j)(1)(B) and require intervenors to prove some freestanding, merits-based "cognizable interest" divorced from the underlying administrative proceeding. First, Plaintiffs apply the wrong legal framework. The statute looks to participation in "the proceeding in connection with which the matter arose," not to Plaintiffs' characterization of the product subject to litigation. 28 U.S.C. § 2631(j)(1)(B). As the Court recognized in *Zenith Radio Corp. v. United States*, "{t}he decision of the administrative agency to accept participation … cannot control the Court's understanding of a matter primarily related to the invocation of its powers of judicial

6

Ct. No. 26-00762

review." 5 CIT 155, 156 (Ct. Int'l Trade 1983). But the relevant point here is that intervention turns on participation in the underlying administrative proceeding itself.

Second, Plaintiffs' argument improperly attempts to resolve a central merits issue at the intervention stage. Plaintiffs' theory depends on the premise that brass-coated steel falls outside the scope of merchandise defined by Commerce. But that is one of the core disputes in this case. Section 2631(j)(1)(B) does not require the Court to decide that merits question in order to determine who may participate. Plaintiffs' characterization of this case as involving only brass-coated steel necessarily depends on a merits determination that goes to the heart of the underlying dispute. It cannot erase Proposed Defendant-Intervenors' status as interested parties that participated in the underlying proceedings. Thus, if Plaintiffs' approach were accepted, any party could defeat intervention simply by recharacterizing the product scope in litigation. That would render § 2631(j)(1)(B)'s as-of-right intervention meaningless in precisely the cases where product definition is disputed. The statute does not permit that result.

### C.     Proposed Defendant-Intervenors Are Not Required to Establish Independent Article III Standing Because They Seek the Same Relief as the United States

Finally, Plaintiffs' attempt to constitutionalize their opposition fares no better. Article III poses no obstacle where proposed defendant-intervenors seek the same relief as the United States.

Plaintiffs contend that Proposed Defendant-Intervenors must independently establish Article III standing and that failure to do so is "independently dispositive." Opp'n. Mot. at 2. That contention ignores what Proposed Defendant-Intervenors actually seek in this action: the same relief sought by the United States, namely affirmance of the agency determination under review.

Plaintiffs' standing objection fails for a straightforward reason. Proposed Defendant-Intervenors do not seek "additional relief beyond that which the {party with standing} requests." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). That

7

Ct. No. 26-00762

principle is dispositive here. Where an intervenor seeks no relief beyond that already requested by a party with standing, Article III does not require a separate, independent showing.

The Federal Circuit has expressly applied this "relief sought" framework to defendant-intervenors in trade cases. In *California Steel Industries, Inc. v. United States*, the court confirmed that standing may be satisfied through what it described as "piggyback standing," where the proposed intervenor seeks the same relief as an existing party. 48 F.4th 1336 (Fed. Cir. 2022). The court explained that the Court of International Trade properly treated standing as a threshold inquiry and recognized that a proposed intervenor may establish standing either independently or through piggyback standing, defined as "standing based on seeking the same relief sought by an existing party to the case." *Id.* at 1340. That holding squarely forecloses Plaintiffs' argument here.

Proposed Defendant-Intervenors do not seek to broaden the case, introduce new claims, or obtain any relief different from that sought by the United States. To the contrary, each one of the Proposed Defendant-Intervenors has been explicit from the outset that it seeks to participate on the side of the Defendant and to support the aspects of Commerce's Final Determination that are contested by Plaintiffs.  Partial Unopposed Mot. to Intervene *as a Matter of Right* (Mar. 16, 2026) at 4, ECF 11; Partial Unopposed Mot. to Intervene (Mar. 20, 2026), ECF No. 15 at 2; Partial Unopposed Mot. to Intervene (Mar 20, 2026), ECF. No. 20 at 2. The only relief Proposed Defendant-Intervenors seek is affirmance of that final determination.

Plaintiffs do not identify any additional or different remedy that Proposed Defendant-Intervenors request, because none exists. Instead, Plaintiffs argue that Proposed Defendant-Intervenors "neither attempted to establish constitutional standing nor claimed piggyback standing." Opp'n. Mot at 3. Plaintiffs' assertion that Proposed Defendant-Intervenors did not establish piggyback standing is incorrect, as they explicitly state that they seek the same

Ct. No. 26-00762

relief as the United States. Plaintiffs' argument elevates form over substance and misstates the governing inquiry. Neither *Town of Chester* nor *California Steel* requires a proposed intervenor to invoke the phrase "piggyback standing" as a talisman. The inquiry is functional, not semantic. Indeed, *California Steel* addressed a similar situation and held that the U.S. Court of International Trade had erred when finding no standing without considering the substance of proposed intervenors' request for relief. 48 F.4th at 1343 ("the appropriate action would have been for the Court of International Trade to request clarification from the parties before *sua sponte* raising and deciding the standing inquiry"). Thus, here, as in *California* Steel, the question is not what label an intervenor uses, but what relief it seeks.

On its face, the answer is clear. Proposed Defendant-Intervenors seek only to defend and sustain the challenged agency determination alongside the United States. Under *Town of Chester* and *California Steel*, that is sufficient to satisfy Article III. Plaintiffs' contrary theory would contravene the holding and rationale of *California Steel* and improperly convert a settled, practical doctrine into a rigid pleading requirement and would exclude intervenors based on word choice rather than substance. That is not the law, and it is not how standing is analyzed in this Court.

Because Proposed Defendant-Intervenors seek the same relief as the United States and no more, Article III is satisfied, and Plaintiffs' standing objection provides no basis to deny intervention.

Ct. No. 26-00762

## III.    CONCLUSION

Plaintiffs' opposition rests on legal standards that do not govern intervention in actions brought under 19 U.S.C. § 1516a. Congress has spoken clearly. Section 2631(j)(1)(B) confers an unconditional right to intervene on any interested party that participated in the underlying proceeding. Each of the Proposed Defendant-Intervenors satisfies that requirement. They actively participated in the Commerce's investigation and seek only to defend the agency determination alongside the United States. Nothing more is required.

Plaintiffs' efforts to transform intervention into a merits-based inquiry or to impose extra-statutory requirements find no support in the text of the statute or in controlling precedent. Accepting Plaintiffs' arguments would upend Congress's carefully balanced framework by transforming intervention into a premature merits adjudication and by disabling petitioners from defending the scope of the very orders they lawfully obtained.

For these reasons, the Court should grant Proposed Defendant-Intervenors' motion to intervene as of right.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Christoper B. Weld, Esq.
Stephanie M. Bell, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

10

Ct. No. 26-00762

*/s/ Jeffrey D. Gerrish*
Roger B. Schagrin
Jeffrey D. Gerrish

**SCHAGRIN ASSOCIATES**
900 Seventh Street, N.W.,
Suite 500
Washington, DC 20001
(202) 626-9230

*Counsel to Steel Dynamics, Inc. and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

*/s/James E. Ransdell*
James E. Ransdell
Thomas M. Beline
Margaret E. Monday

**CASSIDY LEVY KENT (USA) LLP**
2112 Pennsylvania Ave. NW
Ste. 300
Washington, DC 20036
(202) 567-2300

*Counsel to United States Steel Corporation*

Dated: May 1, 2026

11